```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
BENJAMIN E. TILLES,                                          :
                                                             :      13-CV-6743 (JPO)
                                      Plaintiff,             :
                                                             :      OPINION AND ORDER
                 -v-                                         :      ADOPTING REPORT
                                                             :      AND
COMMISSIONER OF SOCIAL SECURITY,                             :      RECOMMENDATION
                                                             :
                                      Defendant.             :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

Plaintiff Benjamin Eduardo Tilles filed this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits.

On February 4, 2015, the Honorable Sarah Netburn, United States Magistrate Judge, issued a Report and Recommendation addressing both parties' motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 48 ("the Report").) Judge Netburn concluded that the ALJ's decision denying Tilles's claims for disability benefits was free of legal error and supported by substantial evidence. Accordingly, she recommended granting the Commissioner's motion for judgment on the pleadings and denying Tilles's cross-motion for the same.

On March 4, 2015, Tilles filed objections to the Report. (Dkt. No. 51 ("Objection").) The Commissioner filed a response in opposition to the objections on March 16, 2015. (Dkt. No. 52 ("Reply").)

For the reasons that follow, the Court adopts Magistrate Judge Netburn's thorough and well-reasoned Report in full.

1

I.      **Standard of Review**

The district court is entitled to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Portions of the magistrate judge's findings or recommendations to which objection is made, if any, are reviewed *de novo* by the district court. *Id.* However, only objections that are "specific and clearly aimed at particular findings" in a magistrate judge's report earn *de novo* review. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Where a party does not object, or files objections of a merely "general" or "conclusory" nature, courts review reports for clear error. *Legall v. Colvin*, No. 13-CV-1426 (VN), 2014 WL 4494753, at *1 (S.D.N.Y. Sept. 10, 2014).[1]

Both Tilles and the Commissioner move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 22 & 39.) A Rule 12(c) motion will be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*, 32 F. Supp. 3d 436, 441–42 (S.D.N.Y. 2014) (internal quotation marks omitted).

An ALJ's decision will be set aside only if it is the product of legal error or unsupported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "[Substantial evidence] is more than a mere scintilla. It means such relevant evidence as a reasonable mind

---

[1] The Commissioner argues that Tilles's objections "simply reiterate[] arguments previously submitted to Judge Netburn" and therefore merit only clear error review. (Reply at 3; *see id.* at 7, 10, 12 & 14.) "While courts in this district sometimes state that objections that simply reiterate the original arguments merit only clear error review, this rule lacks support in either 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), and is, moreover, at odds with the rule regarding waiver." *Crowley v. Colvin*, No. 13-CV-1723 (AJN) (RLE), 2014 WL 4631888, at *1 (S.D.N.Y. Sept. 15, 2014) (citation, brackets, and internal quotation marks omitted). Accordingly, the Court reviews the portions of the Report to which Tilles objects *de novo*.

might accept as adequate to support a conclusion." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (alteration in original) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If the Court finds that there is substantial evidence for the determination [to deny benefits], the Commissioner's decision must be upheld, even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ from the [Commissioner's]." *Alves v. Colvin*, No. 13-CV-3898 (RJP), 2014 WL 4827886, at *5 (S.D.N.Y. Sept. 29, 2014).

## II.     Discussion

Judge Netburn's Report describes the factual and procedural background of this case in great detail, and the Court need not recount it here.

Tilles offers five objections to the Report. He objects that the Report (1) erroneously concluded that the ALJ properly evaluated the opinion of psychiatrist David Wyckoff, Tilles's treating physician; (2) erred in concluding that the ALJ properly applied the treating physician rule; (3) wrongly found that the ALJ did not err in failing to explain his implicit rejection of certain evidence; (4) erroneously concluded that a portion of the ALJ's finding regarding Tilles's residual functional capacity ("RFC") was overly vague; and (5) wrongly found that the ALJ's implicit adverse credibility findings were permissible.

### A.     Dr. Wyckoff's Opinion

Tilles first argues that the ALJ erred in concluding that Dr. Wyckoff's opinion was consistent with the RFC determination. At best, Tilles says, Dr. Wyckoff's opinion was ambiguous, and the ALJ should have contacted him for clarification. This objection is unavailing.

As the Report notes, the ALJ relied on a medical questionnaire completed by Dr. Wyckoff in March 2011, as well as a psychiatric evaluation update by Dr. Wyckoff in May 2011. (Report at 36–37.)  In his March 2011 questionnaire answers, the ALJ observed, Dr. Wyckoff found that Tilles had "longstanding mood instability, depression, feelings of helplessness and hopelessness, irritability, difficulty managing his anger, hypomanic episodes, paranoid ideation and referential thinking." (Dkt. No. 16, Administrative Record ("AR"), at 17.)  Dr. Wyckoff also noted that Tilles's "interpersonal problems [and] general distrust of the intentions of others[] would make it very difficult for him to get along appropriately with supervisors and co-workers on any sustained basis." (*Id.* at 339.)  Dr. Wyckoff accorded Tilles a GAF—a Global Assessment of Functioning[2] score—of 50. (*Id.*)  In his May 2011 update, however, Dr. Wyckoff wrote that Tilles had "made definite gains" since his initial psychiatric evaluation in September 2010, including "much improved mood stability [and] anger control" and "somewhat lessened depression." (*Id.* at 721.)  Dr. Wyckoff also noted Tilles's "pleasant personality" and the fact that he "responded positively to individual supportive psychotherapy[] and benefitted from his mood-stabilizing medication" in the prior six to eight months. (*Id.*)  The ALJ observed that, of the evidence he reviewed, the May 2011 report was the "[m]ost instructive." (*Id.* at 18.)  Based on the evidence presented, including the above, the ALJ concluded that Tilles has the RFC "to perform light work" but "is restricted to the performance of simple and repetitive tasks in a job that involves little stress, namely, ones [*sic*] that require only occasional decision-making and no

---

[2] "The Global Assessment of Functioning (GAF) Scale . . . ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  A GAF range of 41–50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004) (citation omitted).

changes in the work setting and only the occasional contact with the public and co-workers." (*Id.* at 15.)

The ALJ did not err when he found that Dr. Wyckoff's March 2011 questionnaire answers were not "inconsistent with the [RFC determination] when read in tandem with his May 2011 report." (*Id.* at 19.) As the ALJ noted, Dr. Wyckoff's finding about Tilles's difficulties in social interaction "did not quantify the degree of limitation" on Tilles's ability to interact with co-workers and supervisors. (*Id.*) The May 2011 update, moreover, can be fairly read as reflecting a judgment that Tilles's condition had improved in the two-month period since Dr. Wyckoff administered the medical questionnaire. The fact that Dr. Wyckoff gave Tilles a GAF score of 50 on both reports is not, in and of itself, compelling evidence to the contrary. And because the ALJ fairly read Dr. Wyckoff's reports as consistent, he had no obligation to contact Dr. Wyckoff to seek clarification. *See Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014). The Report correctly upheld the ALJ's determination that his RFC finding is consistent with Dr. Wyckoff's opinion. Tilles's argument to the contrary is unavailing.

B.     The ALJ's Application of the Treating Physician Rule

Next, Tilles argues that the ALJ erred by failing to acknowledge in his decision the opinions of Dr. Mohammad Shuja and Dr. Sheryl Pringle, physicians who examined Tilles at the Federal Employment and Guidance Service ("FEGS"), and Wayne Cato, a social worker at the Postgraduate Center for Mental Health ("PCMH"). (Objection at 11.) Tilles no longer argues that the ALJ incorrectly failed to apply the treating physician rule to these opinions. (*See* Report at 44–45.) But he nonetheless contends that the fact that the ALJ omitted reference to these opinions in his decision may reflect the ALJ's erroneous view that they were entitled to no weight or consideration. (Objection at 12.) Moreover, Tilles says, the ALJ's failure to

acknowledge this evidence affected his erroneous evaluation of psychiatrist Dr. Misha Sivia's opinion: a factor to be considered in weighing a medical opinion is whether it is consistent with other evidence, and the unacknowledged evidence supported Dr. Sivia's opinion.[3] (*Id.* at 14–15.)

These arguments are without merit. The premise of Tilles's argument—that the ALJ did not acknowledge the evidence of Cato and Drs. Shuja and Pringle—is a faulty one. As the Report noted, the ALJ referenced the FEGS records, which contained the opinions of Drs. Shuja and Pringle, several times in his decision. (Report at 47; AR at 18–19.) Although the ALJ "tended to refer to findings by the [FEGS] staff in the aggregate" (Report at 47), he clearly believed that the evidence was entitled to consideration. As to Cato and Dr. Sivia, the ALJ specifically cited Cato's intake interview with Tilles, and he explained both the content of Dr. Sivia's opinion and his reasons for not affording it "much weight." (Report at 47–48; AR at 18–19.) In fact, the ALJ discounted Dr. Sivia's opinion partly because it was inconsistent with Dr. Wyckoff's evidence. (AR at 19.)

In any event, as the Report notes, the ALJ is not "required to mention or discuss every single piece of evidence in the record." *Zabala v. Astrue*, No. 05-CV-4483 (WHP), 2008 WL 136356, at *4 (S.D.N.Y. Jan. 14, 2008) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam) ("Where the evidence of record permits the court to glean the rationale of an ALJ's decision, the ALJ is not required to explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (alterations and internal quotation marks omitted))), *aff'd*, 595 F.3d 402 (2d Cir. 2010). This objection is overruled.

---

[3] Tilles does not appear to contest the Report's conclusion that Dr. Sivia was not a treating physician. (*See* Objection at 11.)

C.   The Implicit Rejection of Evidence

Tilles also contests the Report's conclusion that the ALJ did not err in "implicitly rejecting" aspects of Dr. Wyckoff's opinion. (Objection at 16.)  As noted above, Dr. Wyckoff wrote in his March 2011 questionnaire answers that Tilles "had difficulty getting along with supervisors *and* co-workers on a sustained basis." (AR at 17 (emphasis added).)  In his RFC determination, however, the ALJ found only that Tilles was restricted to work that involved "only the occasional contact with the public and co-workers," and made no reference to "supervisors." (*Id.* at 15.)

To the extent that the ALJ erred by failing to provide explanation for this omission, the Court agrees with the Report that it was a harmless one.  Substantial evidence supported the ALJ's RFC finding that Tilles required a restriction only for contact with the public and co-workers.  Dr. Wyckoff's May 2011 update—which, as observed above, the ALJ found to be "[m]ost instructive"—did not state that Tilles would have any difficulty in interactions with supervisors or co-workers. (AR at 18.)  On the contrary, Dr. Wyckoff found that Tilles had "made definite gains" since his initial evaluation in September 2010, including "much improved stability [and] anger control" and "somewhat lessened depression." (AR at 721.)  He found Tilles to be, among other things, "cooperative," "behaviorally appropriate," and "[w]ell-oriented." (*Id.*)  The ALJ was entitled to rely on this opinion in crafting his RFC determination, and his failure to explain either the omission of any reference to supervisors or for distinguishing between supervisors and co-workers is not an error affecting the ultimate disposition of this case.  Remand is accordingly unnecessary.[4]  *See Torres v. Comm'r of Soc. Sec.,* No. 13-CV-0914

---

[4] The ALJ could have also implicitly relied on Tilles's testimony in drawing a distinction between co-workers and supervisors.  Though Tilles testified that he has "a hard time dealing with people," in particular with "people telling [him] what to do," he also noted that he had good

(SJF), 2014 WL 4075988, at *9 (E.D.N.Y. Aug. 12, 2014) ("If the application of the correct legal standard could lead only to the same conclusion, the error is considered harmless and remand is unnecessary." (citing *Zabala*, 595 F.3d at 409)).[5]  This objection is therefore overruled.

### D. The ALJ's RFC Finding

Fourth, Tilles says that a portion of the ALJ's RFC determination—that limiting Tilles to employment involving "only the occasional contact with the public and co-workers"—is "overly vague." (Objection at 18.)  In particular, Tilles argues that ALJ's use of the term "occasional"—defined in the regulations as "occurring from very little up to one-third of the time," SSR 83–10, 1983 WL 31251, at *5 (Jan. 1, 1983)—fails to convey the nature of Tilles's limitation with sufficient precision.  As a result, Tilles argues, the hypothetical put to the vocational expert was overly vague, and that testimony cannot be relied upon in assessing the reasonableness of the ALJ's decision.

This objection lacks merit.  An ALJ's use of "occasional" in the context of an RFC determination is common and not, in and of itself, an error.  *See, e.g.*, *Dillard v. Colvin*, No. 13-CV-6279 (LTS) (HBP), 2015 WL 556448, at *16 (S.D.N.Y. Feb. 6, 2015) (upholding ALJ's denial of benefits where RFC determination stated "that plaintiff was limited to performing unskilled work with only occasional interaction with the public"); *Qui Li Mei v. Astrue*, No. 12-

---

relationships with his supervisors in both of his recent jobs. (AR at 40–47.) Tilles quit the first job of his own accord, but he left the second because of an altercation with a co-worker. (AR at 44–45; 46–47.) This is substantial evidence supporting the ALJ's RFC finding.

[5] Tilles cites *Medley v. Astrue*, No. 7:11-CV-0053-O-KA, 2011 WL 6840576 (N.D. Tex. Dec. 29, 2011), for the proposition that "[a] limitation to interacting with co-workers and supervisors . . . on the one hand is not the same as a limitation with just interacting with coworkers." (Objection 16.) *Medley*, however, is distinguishable: there, the ALJ omitted the term "supervisors" from his hypothetical question to the vocational expert, after the ALJ had recognized a limitation regarding contact with supervisors in his RFC determination. *Id.* at *3. That error, unlike the ALJ's omission here, could not have been based on substantial evidence.

CV-2545 (FB), 2013 WL 3708886, at *1 (E.D.N.Y. July 12, 2013) (upholding denial of benefits where RFC finding limited plaintiff to employment requiring only "occasional interaction with public or coworkers"). The fact that the word "occasional" encompasses a capacious range of conditions does not, without more, render an RFC finding that uses it "overly vague." There is no evidence, moreover, that the vocational expert did not understanding the proper meaning of "occasional" here. This objection is therefore overruled.[6]

### E.  The ALJ's Implicit Adverse Credibility Findings

Finally, Tilles renews his argument, which the Report rejected, that the ALJ erred by making an implicit adverse finding regarding Tilles's credibility. Tilles argues that, despite his subjective complaints, the ALJ found that he could "work on a sustained basis." (Dkt. No. 40, Memorandum of Law in Support of Motion for Judgment on the Pleadings, at 17.) The ALJ also allegedly ignored evidence about Tilles's travel limitations, the fact that he quit the GED program, and the fact that medications make him sleepy. (*Id.*) The Report notes that, although the ALJ did not make an express credibility finding as to Tilles, he found that "[Tilles's] subjective complaints are . . . consistent with [the RFC determination]." (AR at 19; Report at 59.)

---

[6] In support of his position, Tilles relies on *Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013), in which the Second Circuit remanded an application for disability benefits partly because of the insufficiency of the ALJ's finding that the claimant had an impairment that allowed him to reach only "occasionally." *Id.* at 422. *Selian* is inapposite. The ALJ's use of "occasionally" was impermissibly vague because she relied solely on the Medical-Vocational Guidelines (the "Grids") to determine whether the claimant could work in another vocation. *Id.* at 421. But reliance on the Grids is permissible only where "a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Id.* The ALJ did not making a finding as to whether the claimant's reaching impairment was "negligible"; instead, she found merely that the claimant could reach only "occasionally." *Id.* at 422. *Selian*, therefore, does not stand for the proposition that the mere use of "occasionally" in an RFC determination is fatally vague.

The ALJ did not err in any implicit credibility finding he might have made. "[I]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Bushansky v. Comm'r of Soc. Sec.*, No. 13-CV-2574 (JGK), 2014 WL 4746092, at *7 (S.D.N.Y. Sept. 24, 2014) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)) (internal quotation marks omitted). But, as the Report observes, the ALJ did not disbelieve Tilles regarding his symptoms; he found merely that Tilles "was not credible to the extent that he claimed disability." (Report at 60.) As noted above and in the Report, there was substantial evidence for the ALJ's RFC determination, even crediting Tilles's testimony about his symptoms. And to the extent that the ALJ omitted mention of some of Tilles's evidence, the Court reiterates that the ALJ need not "mention or discuss every single piece of evidence in the record." *Zabala*, 2008 WL 136356, at *4; *Rodriguez ex rel. Mena v. Astrue*, No. 10-CV-0305 (PKC), 2011 WL 2923861, at *9 (S.D.N.Y. July 7, 2011) ("The [ALJ] is not required to describe every piece of evidence in her decision as long as the court is able to look to other portions of the ALJ's decision and to clearly credible evidence to find that her decision was supported by substantial evidence." (internal quotation marks omitted)). This objection is therefore overruled.

### III.  Conclusion

The Court has also reviewed the remainder of the Report, to which Tilles did not specifically object, and concludes that it is not clearly erroneous.

Accordingly, for the foregoing reasons, Magistrate Judge Netburn's Report and Recommendation is hereby ADOPTED; the Commissioner's motion for judgment on the

pleadings is hereby GRANTED; and Tilles's motion for judgment on the pleadings is hereby DENIED.

The Clerk of Court is directed to close the motions at docket numbers 22 and 39 and to close this case.

SO ORDERED.

Dated: March 31, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge